IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILIP JAMES SMYTHE | : | CIVIL ACTION |
| [BM-5392] | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID DIGUGLIELMO, et al. | : | NO. 05-5869 |

## REPORT AND RECOMMENDATION

M. FAITH ANGELL
UNITED STATES MAGISTRATE JUDGE                                    October 17, 2006

Presently before this Court is a *pro se* Petition for Writ of Habeas Corpus filed, pursuant to 28 U.S.C. §2254, by a state prisoner.  Petitioner is currently incarcerated at State Correctional Institution ["SCI"] Graterford, Pennsylvania, where he is serving a five to twenty year sentence for aggravated indecent assault and related offenses.  For the reasons which follow, it is recommended that Mr. Smythe's parole claims be denied and dismissed without an evidentiary hearing.

## I.  BACKGROUND[1]

### A.  Procedural history.

In a prior habeas action, the Honorable William H. Yohn, Jr. described the factual background of this case through the denial of Mr. Smythe's application for parole on September 12, 2000:

> Smythe was convicted in 1991 and 1992 of four counts of aggravated indecent assault, indecent assault, and corruption of minors in the Court of

---

[1]     In preparing this Report and Recommendation, I have reviewed the following documents: Mr. Smythe's habeas petition and memorandum of law in support, the Commonwealth's response (with appendix of exhibits), Petitioner's reply and supplemental reply.

Common Pleas of Bucks County, Pennsylvania.  He was sentenced to imprisonment for an aggregate term of not less than five years, a period that expired on October 12, 1996, and not more than twenty years, which would run until October 12, 2011.[2]

After having served his minimum sentence, Smythe became eligible for parole.  On March 27, 1997, however, the Pennsylvania Board of Probation & Parole ("PBP&P") determined that given Smythe's status as a habitual offender, his pronounced assaultive behavior potential, his need for counseling and treatment, and his failure to benefit from a treatment program for sex offenders, parole could not be granted to him.  Following this initial denial, Smythe filed a state law mandamus action against the PBP&P and its members, seeking to compel his release from confinement.  The Commonwealth Court of Pennsylvania dismissed the suit on the ground that because the decision whether to grant parole is discretionary, such was "not subject to mandamus in [the court's] original jurisdiction."  *Smythe v. PBP&P,* No. 427-M.D.-1997 (Pa.Commw.Ct. May 9, 1997)(order dismissing petition).  On August 27, 1998, Smythe filed a second complaint based on the parole denial.  This action was civil in nature, and was brought in the Court of Common Pleas of Montgomery County, Pennsylvania against Chairman Ward and several other members of the PBP&P in their individual capacities.  Smythe alleged that the denial deprived him of various rights secured by the Pennsylvania and federal constitutions, and sought money damages from the defendants in that suit pursuant to 42 U.S.C. §1983.  Subsequent parole denials were issued on May 27, 1998, January 15, 1999, September 27, 1999 and September 13, 2000, all of which cited Smythe's failure to successfully complete a treatment program for sex offenders.

On February 18, 2000, Smythe filed the instant pro se petition for a writ of habeas corpus based on the September 17, 1999 denial.  Though it is less than perfectly clear from the face of the petition, it appears that he articulates two primary federal grounds for the relief sought.  First, he asserts that the denial was effected in retaliation for the 1997 civil suit in Montgomery County against the individual board members, in contravention of his First Amendment right to free speech. [ . . . ] Second, he contends that the Pennsylvania Sentencing Code and due process require that prisoners be released at the expiration of their minimum term of incarceration.

*Smythe v. Ward*, Civil Action No. 00-909, September 18, 2001 Opinion [Docket Entry No. 9] at

pp. 1-2.

---

[2]      In 1994, Smythe filed a habeas petition challenging his 1992 conviction and sentence.  By Order dated April 5, 1995, Judge Yohn denied the habeas petition without an evidentiary hearing.  This decision was affirmed by the Third Circuit on appeal.  *See Smythe v. Vaughn*, Civil Action No. 94-4973.

The February 18, 2000 habeas petition was dismissed without prejudice to Mr. Smythe's right to raise his federal constitutional claims in a mandamus proceeding in Pennsylvania state system. *Id.* at p. 7.

On March 19, 2003, Petitioner filed a "Petition for Review" in the Pennsylvania Commonwealth Court. In this document, Petitioner asserted that he had been denied parole for the sixth time in September 2002. He argued that: (1) the Board's denial of parole failed to meet Due Process requirements; (2) the Board's review of his parole application "under a retroactive application of changes in rules, guidelines, policies and statutes" violated the Ex Post Facto clause; and (3) "the application of the Truth-In-Sentencing Incentive Grants Act, 42 U.S.C. §§13701-712, is also an Ex Post Facto violation of the federal act being applied to his parole review." Petitioner sought "a new parole hearing within 30 days under the pre-1996 rules, guidelines, policies and statutes." *"Appendix to Answer Of The Attorney General"* [Docket Entry No. 8][3] at pp. 37-41.

On April 10, 2003, the Commonwealth Court granted the Board's motion for summary relief and dismissed the petition. *Id.* at pp. 49-50.

Petitioner appealed to the Pennsylvania Supreme Court, which affirmed in a May 16, 2005 Order. *Id.* at p. 54.

---

[3] Hereinafter "Commonwealth's Exhibits."

3

On November 8, 2005, Petitioner filed the instant habeas petition challenging the

Pennsylvania Board of Probation and Parole ["PBPP"] refusal to parole him.  He argues:

1.  "Plaintiff asserts that the Respondents have violated his constitutional rights protected
by the ex post facto clause of the United States Constitution in that the ex post facto
clause applies to Pennsylvania's Parole statutes and policy changes in the parole review
process.  These changed statutes are being applied to plaintiff retroactively which have
disadvantaged him in his parole reviews causing an automatic parole denial because of
his offense."
2.  "The Parole Board[']s retroactive application of §331.1, 'acheiving the fair
administration of justice,' [a catch phrase] rather than an actual reason for the denial of
his parole, violates the Ex Post Facto Clause and fails to satisfy the dictates of due
process of law."
3.  "The Parole Board's amendments and enhancements to their Guidelines Worksheet in
parole review applications, all of which are designed to have an adverse impact,
[specifically designed to deny parole to violent and/or sex offenders], is being
retroactively applied to his parole application in violation of the ex post facto laws."
4.  "The Parole Board does not have authority or jurisdiction to classify him as a habitual
offender, a legal category created by statute in many states by which more severe
penalties can be imposed on offenders who have 'multiple felony convictions'.  In
general, habitual offender statutes (which differ from state to state impose greater
sentences on [an] offender for repeated crimes, which life imprisonment being imposed
upon commission of several felonies.  See 21 U.S.C.A. §848 repeat drug offenders.  See
U.S.C.A. §3553 and Model Penal Code §7.03. [Black's Law Dictionary, Sixth Edition,
Centennial Edition 1891-1991]."
5.  "The Parole Board violated ex post facto laws by retroactively applying an enhanced
risk penalty for assaultive instant offense which equates to an additional penalty for
victim injury."
6.  "The Parole Board's denial of parole based on the alleged failure to participate in and
benefit from a treatment program for sex offenders is a false statement by the board, [see
exhibits J, K, L, M, and N].  Plaintiff has participated in every program available to him,
he has successfully completed every program he had entered, he had benefitted from each
and every program and given recognition as successfully completing and benefiting from
such programs for sex offenders."
7.  "The Board's denial of his parole based on the mandate to protect the safety of
the public and assist in the fair administration of justice is being retroactively
applied to his parole applications in violation of the ex post facto laws."
8.  "The Board's denial of his parole based on lack of remorse for the offense and
or victim is arbitrary, capricious, false and violates the ex post facto laws.  The
pre-1996 procedures never required a parole applicant to show or indicate in any
manner that he or she had remorse for the alleged offense or victim."
9.  "The Board's denial of parole based on the statement of: 'Your version of the

nature and circumstances of the offense(s)' is not only arbitrary and capricious but a part of the new amendments that is being retroactively applied to his parole reviews.  Furthermore, it is another one of the boards most famous cryptic statements that gives the parole applicant no direction or indication of what he must do to improve his parole eligibility."

10.  "The Boards denial of parole based on the statement of 'Your refusal to accept responsibility for the offense committed is arbitrary, capricious, false and violates due process and the ex post facto laws.  The pre-1996 parole statutes, policies and procedures never required a parole applicant to accept responsibility for the alleged offense.  See [Exhibit 1]."

11.  "The Board, in retaliation has denied his parole applications over the years because of his offense and the exercise of his First Amendment right to challenge the Boards denials through Administrative Appeals and accessing the Court. After the second time plaintiff was denied parole, he began challenging the parole denials because he believed he had earned parole under the guidelines in place at the time of his offense, by complying with all DOC prescriptive programs, receiving the DOC recommendations, remained misconduct free, and provided clean urines for drug testing as required by Board policy."

*Habeas Petition: Attached Memorandum of Law* [Docket Entry No. 1] at pp. 1-18.

The Attorney General has responded to Mr. Smythe's habeas petition, arguing that:

(1) Petitioner's retaliation claim has not been properly exhausted in the state system; (2) all

claims based on refusals before the most recent denial of parole on October 17, 2005 are moot;

(3) the decisions of the Pennsylvania Courts on the exhausted habeas issues are not contrary to,

and did not involve any unreasonable interpretation of, clearly established federal law as

determined by the United States Supreme Court; and (4) to the extent that Petitioner requests this

Court to order new parole reviews, or order the conditions under which the Board conducts

future parole reviews, the Court lacks jurisdiction to consider these claims.  *Answer of the*

*Attorney General With Memorandum of Law* [Docket Entry No. 7][4] at pp. 4-5.

---

[4]      Hereinafter "Commonwealth's Response."

**B.  Smythe's Parole History**

The Parole Board has reviewed Mr. Smythe's parole applications on eleven occasions since he reached his minimum sentence, beginning on March 27, 1997 through its most recent decision on October 17, 2005.  Each time, the Board has refused parole.

In the March 27, 1997 and May 27, 1998 decisions, the Board cited several reasons for its denial, including "habitual offender," "very high assaultive behavior potential," "your need for counseling," and "failure to participate in and benefit from a treatment program for sex offenders."  *Commonwealth's Exhibits* at pp. 13, 14.

In its next four decisions (dated January 15, 1999, September 27, 1999, September 13, 2000 and September 18, 2002), the Board stated:

> Following an interview and review of your file, the Pennsylvania Board of Probation and Parole has determined that the fair administration of justice cannot be achieved through your release on parole.  You are therefore refused parole [ . . . ]
> At your next interview, the Board will review your file and consider:
>
> Whether you have participated in/successfully completed a treatment program for: sex offenders.
> Whether you have maintained a favorable recommendation for parole from the Department of Corrections.
> Whether you have maintained a clear conduct record and completed the Department of Corrections' prescriptive program(s).

*Id.* at pp. 15-17, 19.[5]

---

[5]     There are minor variations in these four decisions.  For example, the January 15, 1999 decision did not include the favorable recommendation from the Department of Corrections, and the September 18, 2002 decision cited to participation in/successful completion of a treatment program for sex offenders, Phase III.  *Id.*  There is a decision dated January 10, 2002 which states: "Reaffirm Board Action Recorded on 9/13/2000."  *Id.* at p.18.

The language of the next four parole decisions (April 1, 2003, October 1, 2003,

November 2, 2004 and October 17, 2005) was changed to read:

> "Following an interview with you and a review of your file, and having
> considered all matters required pursuant to the Parole Act of 1941, as amended,
> 61 P.S. §331.1 et seq., the Board of Probation and Parole, in the exercise of its
> discretion, has determined at this time that: your best interests do not justify or
> require you being paroled/reparoled; and that the interests of the Commonwealth
> will be injured if you were paroled/reparoled.  Therefore, you are refused
> parole/reparole at this time."

*Id.* at pp. 20-27.

The reasons given for the denial of parole included:

Your version of the nature and circumstances of the offense(s) committed.
[October 1, 2003, and November 2, 2004].

Your minimalization/denial of the nature and circumstances of the offense(s)
committed [October 17, 2005].

Your refusal to accept responsibility for the offense(s) committed. [November 2,
2004 and October 17, 2005].

Your lack of remorse for the offense(s) committed [April 1, 2003 and November
2, 2003].

Reports, evaluations and assessments concerning your physical, mental and
behavior condition and history [April 1, 2003, and October 1, 2003].

Your need to participate in and complete additional institutional programs [April
1, 2003, November 2, 2004 and October 17, 2005].

Your interview with the hearing examiner and/or board member [April 1, 2003,
October 1, 2003 and October 17, 2005].

*Id.*

Mr. Smythe was advised at each of his last four parole hearings that at the next hearing the Board would review his file and consider: whether he had participated in/successfully completed a treatment program for sex offenders; whether he had maintained a favorable recommendation for parole from the Department of Corrections; and whether he had maintained a clear conduct record and completed the Department of Corrections' prescriptive program(s). *Id.*

## II.  DISCUSSION

**A.  Exhaustion**

### *1.  Legal Standards*

The exhaustion rule, codified in 28 U.S.C. § 2254, generally requires a federal court to postpone habeas corpus jurisdiction until "the applicant has exhausted the remedies available in the courts of the State."  The exhaustion requirement is rooted in considerations of comity; the statute is designed to protect the role of the state court in enforcement of federal law and to prevent disruption of state judicial proceedings.  *Rose v. Lundy*, 102 S. Ct. 1198, 1203 (1982); *Castille v. Peoples*, 489 U.S. 346, 349 (1989).

In order to demonstrate compliance with the exhaustion requirement, a habeas petitioner must show that each claim which forms the basis of his federal habeas petition has been "fairly presented" to the state courts.  *Castille*, 489 U.S. at 351(1989) and *Picard v. Connor*, 404 U.S. 270, 275 (1971).  Absent exceptional circumstances, the petitioner must first present all of his constitutional claims in the state system, through the highest state tribunal, before seeking relief in federal court.  *Picard*, 404 U.S. at 275 (1971) and *Swanger v. Zimmerman*, 750 F.2d 291 (3d Cir. 1984).  The burden is on the habeas petitioner to establish that he has fairly presented his

federal constitutional claims (both facts and legal theory) to all levels of the state judicial system. *Gattis v. Snyder*, 278 F.3d 222, 231 (3d Cir. 2002)(*quoting Evans v. Court of Common Pleas*, 959 F.2d 1227, 1231 (3d Cir. 1992), *cert. petition dismissed*, 506 U.S. 1089 (1993), "[b]oth the legal theory and the facts underpinning the federal claim must have been presented to the state courts . . . and the same method of legal analysis must be available in the state court as will be employed in the federal court.").

A federal district court may not adjudicate a mixed petition for habeas corpus, that is, a habeas petition containing both exhausted and unexhausted claims. The United States Supreme Court has imposed a "total exhaustion" requirement, directing the federal courts to effectuate this requirement by dismissing mixed petitions without prejudice and allowing petitioners to return to state court to present the unexhausted claims to the state courts in the first instance. *Rhines v. Weber*, 544 U.S. 269, 273-74 (2005).

In limited circumstances, a federal court may stay the habeas petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims. Once the habeas petitioner exhausts his state remedies, the district court will lift the stay and allow the petitioner to proceed in federal court. *Id.* at 275-76. The "stay and abeyance" procedure is

> only appropriate when the district court determines there is good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless. [citation omitted]. Even where stay and abeyance is appropriate, the district court's discretion in structuring the stay is limited by the timeliness concerns reflected in AEDPA. A mixed petition should not be stayed indefinitely. [ . . . ] Without time limits, petitioners could frustrate AEDPA's goal of finality by dragging out indefinitely their federal habeas review. Thus, district courts should place reasonable time limits on a petitioner's trip to state court and back. *See, g., Zarvela*, 254 F.3d at 381 ('[District courts] should explicitly condition the stay on the prisoner's pursuing state court remedies within a brief interval, normally 30

days, after the stay is entered and returning to federal court within a similarly brief interval, normally 30 days after state court exhaustion is completed'). And if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all.

*Id.* at 277-78.

Where a petitioner presents a mixed habeas petition, and the district court determines that stay and abeyance is inappropriate, "the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief. See *id. [Lundy],* at 520, 102 S.Ct. 1198 (plurality opinion)('[A petitioner] can always amend the petition to delete the unexhausted claims, rather than return to state court to exhaust all of his claims')." *Id.* at 278.

Notwithstanding the exhaustion requirements, "an application for a writ of habeas corpus may be denied on the merits." *Bronshtein v. Horn,* 404 F.3d 700, 728 (3d Cir. 2005)("Under 28 U.S.C. §2254(b)(2), we may reject claims on the merits even though they are not properly exhausted"), *cert. denied,* 126 S.Ct. 1320 (2006).

### *2. The Retaliation Allegation.*

Mr. Smythe does not dispute the fact that he has not raised his retaliation claim in the state court system. He states:

> Respondents are correct that Petitioner did pursue several petitions for mandamus in the Pennsylvania courts regarding the Board's refusal to parole him on numerous occasions. And as alleged by the Respondents, Petitioner only raised ex post facto claims. He had not actually argued that the Board had refused parole in retaliation because Petitioner had engaged in previous litigation.

Petitioner's "Reply To Attorney General's Answer With Memorandum of Law" [Docket Entry No. 13][6] at p.3.

---

[6]  Hereinafter "Petitioner's Reply."

Petitioner asserts that "he has not failed to exhaust all of his state remedies, that the retaliation is a natural development of the case due to the respondents adverse and illegal reactions once plaintiff started taking legal action against them."  *Id.* at p. 1.  He argues:

> In light of the retaliation and vindictiveness of the Board being a natural development of the case during administrative appeals and State Proceedings over a number of years; the respondents acknowledgment that presenting the claim to the state courts would probably have been rejected on the merits; the Federal Courts ability and Authority/Jurisdiction to review Sue Sponte as it did in the case of [Mickens-]Thomas; and the Third Circuit Court of Appeals holding in Defoy, it would be futile and prejudicial to plaintiff causing at least several years of further litigation and injustice bringing Plaintiff within the exception to the exhaustion requirements, See 28 U.S.C. §2254(b)(1)(B) thereby being properly brought before this Honorable Court.

*Id.* at pp. 4-5.

In *Mickens-Thomas v. Vaughn II*[7]*,* the Third Circuit reviewed, for a second time, the proceedings of the Pennsylvania Board of Probation and Parole in denying Mr. Mickens-Thomas parole.  In *Mickens-Thomas I*[8], the Circuit "thoroughly reviewed the Board proceedings and issued a mandate instructing the Board to rectify its *Ex Post Facto* violations and give Thomas 'fair consideration' under the Pennsylvania parole laws and guidelines in existence prior to 1996."  *Mickens-Thomas II*, 355 F.3d at 295-96.  Upon remand, the Parole Board "without conducting any further hearing," denied Mr. Mickens-Thomas' fourth parole application.  *Id.*[9]

---

[7]     355 F.3d 294 (3d Cir. 2004).

[8]     321 F.3d 374 (3d Cir.), *cert. denied sub. nom. Gillis v. Hollawell*, 540 U.S. 875, 124 S.Ct. 229, 157 L.Ed.2d 136 (2003).

[9]     On July 22, 1996, one day after Mr. Mickens-Thomas became eligible for parole, the Parole Board refused to consider his parole application relying on a newly enacted statute which made an applicant in Mr. Mickens-Thomas' situation ineligible for parole without having served a year in a pre-release center.  The Parole Board then summarily denied Mr. Mickens-Thomas' parole application on August 21, 1997.  Subsequent parole applications by Mr.

In *Mickens-Thomas II*, the Third Circuit examined whether the Parole Board had complied with the District Court's remand order and the Circuit's remand mandate in *Mickens-Thomas I. Id.* at p. 303. In concluding that the Parole Board had not, the Circuit took a "renewed look at the Board's pattern of adjudicating Thomas' parole applications" and determined that "the history of the Board's adjudication of Thomas' parole applications over the years [ . . . ] raised sufficient inferences of retaliation or vindictiveness." Based upon this "presumption of vindictiveness," and "the Board's thinly veiled excuse of error," the Third Circuit was left with "no doubt of its bad faith and willfulness in its defiance of our mandate and instructions" and held that the appropriate remedy under these circumstances was to grant Mr. Mickens-Thomas unconditional habeas relief. *Id.* at 308-311.

In the instant case, I do not read Mr. Smythe's arguments and reliance on *Mickens-Thomas II* as attempting to raise a new habeas claim for retaliation. It appears that Petitioner is arguing that the Board's "adverse and illegal reactions once Plaintiff started tak[ing] legal action against them" "establish a pattern of retaliation throughout the entire parole process and all court proceedings plaintiff has pursued," making "Plaintiff's situation virtually identical to Thomas' with the exception of the charges. Plaintiff has made every effort to satisfy the Board with no success whatsoever. As in Thomas, Plaintiff has made numerous efforts to obtain a favorable parole review and decision but has encountered the parole boards utmost resistance, and therefore, it would be reasonable to infer that Plaintiff's challenges/appeals to the

---

Mickens-Thomas were denied in March 1998 and March 2000. The fourth denial, which gave rise to *Mickens-Thomas II,* occurred on May 22, 2003. *Mickens-Thomas II*, 355 F.3d at pp. 297-299, 303-304.

Commonwealth Courts incurred the ire of the Board just as Mr. Thomas did." *See* Habeas Corpus Petition: Attached Memorandum of Law at pp. 3, 6 and Petitioner's Reply [Docket Entry No. 13] at pp. 1-2.

Because I do not read the retaliation assertions as an independent habeas claim, I will address them within the context of Petitioner's Due Process claims. If Mr. Smythe does, in fact, wish to assert an independent retaliation claim, he must exhaust this claim in the state court system before his habeas claims can be addressed in this forum.

### 3. Many of Mr. Smythe's Remaining Habeas Claims Are Unexhausted.

In his mandamus action in state court, Mr. Smythe did raise claims of *Ex Post Facto* and Due Process violations. These claims, however, did not include all of the allegations he now raises, nor did it challenge parole decisions beyond the September 2002 denial. The arguments in Petitioner's mandamus petition were limited to:

> (1) The September 2002 denial of parole based on the "fair administration of justice" failed to meet due process requirements because the Parole Board used boilerplate language and an "undefined standard.";
> (2) The Parole Board erred as a matter of law and abused its discretion by reviewing Mr. Smythe's parole application under a retroactive application of changes in the rules, guidelines, policies and statutes in violation of the *Ex Post Facto* clause "which disadvantaged him in that had he been reviewed under the prior standards he would have been paroled because of his excellent prison record, the educational programs he has completed, the counseling he has received over the years, and his excellent block and work reports, he has participated in sex offender programs for just over nine (9) years and has completed all programs offered by J.J.P.I. The Petitioner has also remained misconduct free for his entire incarceration complying with all rules, regulations and policies."; and
> (3) The Parole Board's application of the Truth-In-Sentencing Incentive Grants Act (requiring Petitioner to serve 85% of his maximum sentence) is also an *Ex Post Facto* violation.

*Commonwealth's Exhibits* at pp. 37-41.

Notwithstanding Petitioner's apparent failure to exhaust state remedies as to all eleven habeas claims, I conclude that Petitioner's claims may properly be rejected on the merits under 28 U.S.C. §2254(b)(2).

**B.  Merits.**

*1.  Habeas Standard of Review.*

Mr. Smythe's habeas petition was filed after the effective date of AEDPA.  The amended habeas standards apply to his habeas claims.  AEDPA precludes habeas relief on "any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence in the State court proceeding.

28 U.S.C. § 2254(d)(Supp. 1998).

"'[C]learly established Federal law' under §2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Id.* at p. 73 (2003)(*quoting Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

> "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable.

*Id.* at p. 75 (2003)(*quoting Williams v. Taylor*, 529 U.S. at 409-413 (2000)).

With respect to §2254(d)(2), the burden is on the petitioner to establish that the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. *Campbell v. Vaughn*, 209 F.3d 280, 290-91 (3d Cir. 2000), *cert. denied*, 531 U.S. 1084 (2001).

> "[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding. Yet "deference does not imply abandonment or abdication of judicial review. In other words," [d]eference does not by definition preclude relief."

*Lambert v. Blackwell,* 387 F.3d 210, 234-235 (3d Cir. 2004)(*quoting Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)), *cert. denied,* 125 S.Ct. 2516 (2005).

In *Lambert*, the Third Circuit noted that the relationship between the reasonableness determination under 28 U.S.C. §2254(d)(2) and the presumption of correctness under 28 U.S.C. §2254(e)(1) "remains unclear." The *Lambert* Court provided the following principles:

> [T]he language of §2254(d)(2) and §2254(e)(1) implies an important distinction: §2254(d)(2)'s reasonableness determination turns on a consideration of the totality of the "evidence presented in the state-court proceeding," while §2254(e)(1) contemplates a challenge to the state court's individual factual determinations, including a challenge based wholly or in part on evidence outside of the state trial record. [citations omitted]  We therefore read §2254(d)(2) and §2254(e)(1) together as addressing two somewhat different inquiries. The fundamental prerequisite to granting a writ on factual grounds is consideration of the evidence relied upon in the state court proceeding. Section 2254(d)(2) mandates the federal habeas court to assess whether the state court's determination was reasonable or

15

unreasonable given that evidence.  If the state court's determination is unreasonable in light of the evidence presented in the state court proceeding, habeas relief is warranted.

Within this overarching standard, of course, a petitioner may attack specific factual determinations that were made by the state court, and that are subsidiary to the ultimate decision.  Here, section 2254(e)(1) comes into play, instructing that the state court's determination must be afforded a presumption of correctness that the petitioner can rebut only by clear and convincing evidence.  In this inquiry, a petitioner may develop clear and convincing evidence by way of a hearing in federal court as long as he satisfies the necessary prerequisites.  See 28 U.S.C. §2254(e)(2).  In the final analysis, however, even if a state court's individual factual determinations are overturned, what factual findings remain to support the state court decision must still be weighed under the overarching standard of section 2254(d)(2).

*Id.* at 235-236 (3d Cir. 2004).

Two points are paramount under AEDPA's factual review provisions: (1) the state court findings are entitled to "considerable deference" and (2) before a writ of habeas corpus can be granted, the petitioner must show an unreasonable determination - under (d)(2) - in light of the entire record in the original state court trial.  *Id.* at 236 (3d Cir. 2004).

### 2.  Petitioner is Not Entitled to Habeas Relief on His Ex Post Facto Claims.

Mr. Smythe alleges *Ex Post Facto* violations in at least seven of his habeas claims.[10]  He argues that the 1996 Amendments "are being applied retroactively which have disadvantaged him in his parole reviews causing an automatic parole denial because of his offense."  According to Petitioner, the Board's parole decisions on April 1, 2003, October 1, 2003 and November 2, 2004 did not give "any consideration to matters favoring his parole, including no opposition from the trial judge, district attorney, or the victim.  They [the Parole Board] failed to give any consideration to the recommendation from the Department of Correction, the Guidelines

---

[10]     *Habeas Petition: Attached Memorandum of Law*: habeas grounds one, two, three, five, seven, eight, and ten.

Worksheets recommending parole, the programs completed by plaintiff including all required sex offender programs."  Mr. Smythe opines that his "situation is virtually identical to [Mickens]Thomas' with the exception of the charges.  Plaintiff has made every effort to satisfy the board with no success whatsoever."  *Habeas Petition: Attached Memorandum of Law* at pp. 1-3.

The Commonwealth Court, in granting the Parole Board's application for summary relief, held, consistent with *Reynolds v. Pa Board of Probation and Parole*, 809 A.2d 426 (Pa. Cmwlth. 2002), "that a form containing parole guidelines is not a 'law' subject to *ex post facto*." *Commonwealth's Exhibits* at p. 49.

After the Commonwealth's decision on Petitioner's mandamus action, the Pennsylvania Supreme Court, in *Cimaszewski v. Board of Probation and Parole*[11], held:

> [G]iven the [United States] Supreme Court's jurisprudence on this issue in *Morales* and *Garner*, it is now clear that retroactive changes in the laws governing parole **may** violate the *ex post facto* clause.  *Morales*, 514 U.S. at 509, 115 S.Ct. 1597 (holding that a change in parole law violates the *ex post facto* clause if the change in the law created a "sufficient risk of increasing the measure of punishment attached to the covered crimes"); *Garner*, 529 U.S. at 256, 120 S.Ct. 1362 (holding that a change in parole rules violates the *ex post facto* clause if the amended rule creates a significant risk of prolonging an inmate's incarceration).

*Cimaszewski*, 868 A.2d at 426-27.

To be eligible for habeas corpus relief based on a violation of the *Ex Post Facto* Clause, a petitioner must show *both* a retroactive change in law or policy *and* that this change caused individual disadvantage by creating "a significant risk of increasing his punishment." *Richardson v. Pennsylvania Board of Probation and Parole*, 423 F.3d 282, 284 (3d Cir. 2005).

---

[11]        868 A.2d 416 (Pa. 2005).

In *Richardson,* the Third Circuit, relying on *Mickens-Thomas* precedent and the holding in *Cimaszewski*, held that the 1996 Amendments to the Pennsylvania Parole Act "made a change in Pennsylvania parole policy as a general matter," and, therefore, satisfy the first prong of the *Ex Post Facto* inquiry. *Id.* at 289, 291.[12]

Relying on the *Richardson* precedent, I find that the first prong of the *Ex Post Facto* inquiry has been met in Mr. Smythe's case.

As to the second prong of the *Ex Post Facto* inquiry, Mr. Smythe must establish that the 1996 amendments negatively affected his parole determination. *Richardson*, 423 F.3d at 291-92. *Mickens-Thomas* met this burden by: producing statistical evidence specific to his case, including the fact that out of 266 prisoners whose life sentence was commuted in the recorded history of the Parole Board, he was the only individual whose parole was denied; showing that the Parole Guidelines counseled in favor of parole, and that the Department of Corrections staff had

---

[12]     In *Mickens-Thomas I,* 321 F.3d 374 (3d Cir. 2003), the Circuit concluded that the "practical effect" of the 1996 Amendments was to create "a more stringent standard of review," particularly for the parole of violent offenders. *Richardson*, 423 F.3d at 289 (*quoting Mickens-Thomas I*).

Shortly before *Mickens-Thomas I* was filed, the Pennsylvania Supreme Court issued *Winklespecht v. Pennsylvania Board of Probation and Parole*, 813 A.2d 688 (Pa. 2002), in  which the state Supreme Court concluded that the 1996 Amendments "[do] not create a substantial risk that parole would be denied any more frequently than under the previous wording" and held that the retrospective application of the 1996 Amendments does not violate the *Ex Post Facto* Clause. *Id.* at 290 (*quoting Winklespecht*, 813 A.2d at 691-92).

On February 24, 2005, the Pennsylvania Supreme Court held in *Cimaszewski* that under the United States Supreme Court decisions of *Calif. Dep't of Corr. v. Morales*, 514 U.S. 499 (1995) and *Garner v. Jones*, 529 U.S. 244 (2000), "retroactive changes in the law governing parole *may* violate the *Ex Post Facto* clause."  Under *Cimaszewski*, in order to establish an *Ex Post Facto* violation, the petitioner must provide "the requisite evidence that he faces a significant risk of an increase in punishment" by showing that "under the pre-1996 Parole Act, the Board would likely have paroled the inmate."  *Richardson*, 423 F.3d at 290-291 (*quoting Cimaszewski*, 868 A.2d at 426-28).

unanimously recommended him for parole; and pointing to the rationale given by the Parole

Board for denying him parole, from which the Court inferred that the change in policy after the

1996 Amendments had a significant, if not determinative, effect on Mickens-Thomas' denial of

parole. *Id.*

In the instant case, Mr. Smythe has not met his burden of showing he was individually

disadvantaged by the 1996 Amendments.

> #### a. Petitioner has not shown that application of the 1996 Amendments have negatively affected his parole.

In December of 1996, the Pennsylvania legislature amended the policy statement of the

Parole Act by adding language that stated: "the [B]oard shall first and foremost seek to protect

the safety of the public."  61 P.S. §331.1.[13]

---

[13]   Before the 1996 Amendment, §331.1 read:

The value of parole as a disciplinary and corrective influence and process
is hereby recognized, and it is declared to be the public policy of this
Commonwealth that persons subject or sentenced to imprisonment for
crime shall, on release therefrom, be subjected to a period of parole
during which their rehabilitation, adjustment and restoration to social
and economic life and activities shall be aided and facilitated by guidance
and supervision under a competent and efficient parole administration,
and to that end it is the intent of this act to create a uniform and exclusive
system for the administration of parole of this Commonwealth.
Act 1941, Aug. 6, P.L. 861, §1 (pre-1996).

*Gonzales v. Wynder*, CA No. 04-5155, 2005 WL 856850 at *3 (E.D. Pa. April 12, 2005).

After the 1996 Amendment, §331.1 reads:

The parole system provides several benefits to the criminal justice
system, including the provision of adequate supervision of the offender
while protecting the public, the opportunity for the offender to become
a useful member of society and the diversion of appropriate offenders
from prison.  In providing these benefits to the criminal justice

In December 2002, the Pennsylvania Supreme Court, in *Winklespecht* determined that:

> The rewording of 61 P.S. §331.1 did not create a substantial risk that parole would
> be denied any more frequently than under the previous wording, nor did the
> addition of this language create a new offense or increase the penalty for an
> existing offense [ . . . ] Although the language concerning "protect[ing] the safety
> of the public" and "assisting in the fair administration of justice" was added to
> §331.1 in 1996, these concepts are nothing new to the parole process and have
> always been underlying concerns.  Both versions of §331.1 leave the decision
> regarding the grant of parole within the discretion of the Board; the fact that some
> language was added in 1996, which clarified the policy underlying the parole
> process, does nothing that increases [petitioner's] punishment.

*Winklespecht*, 813 A.2d at 691-92.

Mr. Smythe has failed to demonstrate that the Parole Board gave the 1996 amendments

inappropriate or controlling weight in its decisions to deny hm parole.  He offers no evidence that

but for the 1996 amendments, he would have been released on parole.

First, the Board's most recent parole denials (April 1, 2003, October 1, 2003, November

4, 2004 and October 17, 2005) occurred well after the *Winklespecht* decision, giving the Board

the benefit of the Pennsylvania Supreme Court's analysis of the 1996 amendments, and its

determination that the change in the statutory language of §331.1 did not constitute an

abandonment of the criteria previously considered by the Board in making parole decisions.

---

system, *the board shall first and foremost seek to protect the safety
of the public.*  In addition to this goal, the board shall address input
by crime victims and *assist in the fair administration of justice* by
ensuring the custody, control and treatment of parole offenders.
61 P.S. §331.1 (emphasis added)(post-1996).
*Id.*

20

Additionally, in all of its parole decisions, the Board has stated numerous factors which it considered in denying parole, many of which are factors referenced in the Parole Act since its inception in 1941.[14]  The Board has consistently cited the nature of the crimes committed and Mr. Smythe's need to participate in and complete additional treatment programs for sex offenders. Other reasons cited in several decisions include: Petitioner's minimalization/denial of the nature and circumstances of the offenses committed, his refusal to accept responsibility and his interview with the hearing examiner and/or Board member.  These factors are supported by the record.  *Commonwealth's Exhibits* at pp. 28-35.  Clearly, the Board's decisions to deny Mr. Smythe parole did rely on pre-1996 factors and did not place undue weight on considerations of public safety.  The reasons given for denial of parole by the Parole Board are not outside the Board's broad discretion.

In his reply, Petitioner argues that:

> [H]e has complied with every requirement imposed upon him in order to make parole as required by Parole Statute and Department of Corrections Prescriptive Programs; the respondents constantly changing/amending parole policies, practices, procedures, statutes and guidelines, applying them to him after the fact, refusing to release him, clearly imposes atypical and extremely significant hardship on him in relation to the ordinary incidents of prison life when he has been directed by his trial counsel and the court prior to sentencing that if he maintains good conduct and participates in Institutional programs he will only have to serve his minimum sentence. [ . . . ]

---

[14]     Section 331.21(a): "Power to Parole," authorizes the Board, in its discretion, to grant parole (or re-parole) "whenever in its opinion the best interests of the convict justify or require his being paroled and its does not appear that the interests of the Commonwealth will be injured thereby."  61 P.S. §331.21 (a), ( c).  These sections have not changed in any material way since 1941.

   In each of the parole decisions since April 1, 2003, the Board has stated that Mr. Smythe's "best interests do not justify or require you being paroled/reparoled" and "the interests of the Commonwealth will be injured if you are paroled/reparoled."

Petitioner is 70 years old and is in better physical, mental and emotional condition then some inmates half his age, yet the respondents allege that petitioner has in some way failed evaluations and assessments concerning his physical, mental and behavior condition and history. [ . . . ]

The respondents also allege that Petitioner is a predator, preying upon single parents and their children and in support of this allegation, they submit two letters from the Office of the District Attorney in opposition to petitioner's parole.  They allege that they received this report on or about April 27, 1998 and one on November 17, 1998.

Petitioner asserts that the respondents have never indicated any opposition from the District Attorney's Office until the present litigation, in an effort to discredit Petitioner, very much like they attempted to do in the Thomas v. Vaughn case. [ . . . ] As noted in petitioner's brief, the respondents mandate an impossible task that petitioner participate in, complete and benefit from a Phase III Sex Offender program which is a life time commitment of counseling and programming. Petitioner has already agreed to participate in any Sex Offender Programs recommended by the Board, however, they refuse to recognize that Petitioner has already participated in and completed all prescriptive programs available to him at the institution.  They refuse to acknowledge petitioner's acceptance of his responsibility and remorse for his offenses, in fact, the respondents have outright refused to acknowledge any positive facts that Petitioner has accomplished."

*Petitioner's Reply* at pp. 12-13, 18-20.

Some of Petitioner's arguments are refuted by the record, for example, on June 13, 2005, Petitioner was charged with misconduct (refusing to obey an officer and lying to an employee). *Commonwealth's Exhibits* at pp. 30-31.  Others have no support in the record.  While Petitioner has submitted certificates of attendance and completion of various programs offered by Joseph J. Peters Institute (dating from 1998 through 2002)[15], he has offered no evidence to support his allegation that Phase III of the Sex Offender Program is not available to him.  None of Petitioner's arguments demonstrate that he faces an increased risk of incarceration based on the 1996 amendments.  His assertion that the 1996 amendments violated the *Ex Post Facto* clause, without actual evidence to back up that assertion, is without merit.

---

[15]        *Habeas Petition*: *Exhibits J - N.*

**b.  *Petitioner denies asserting any claim that 2000 Sex Offender Therapy Statute Violates Ex Post Facto Clause.***

In responding to Mr. Smythe's habeas petition, the Commonwealth reads his claims as asserting that the Parole Board has refused to release him on parole due to a Pennsylvania statute enacted in 2000, 42 Pa.C.S. §9718.1.[16]  The Commonwealth notes that the language of 42 Pa.C. §9718.1 limits its application to offenses committed on or after the effective date of the act (December 20, 2000).  The Act, therefore, it does not apply to Mr. Smythe whose offense was committed in 1990, and was not applied by the Parole Board in denying him parole. *Commonwealth's Response* at pp. 18-19.  The Commonwealth further argues that

> even if §9718.1 applied to crimes committed before its enactment, or if the Board applied §9718.1 to Petitioner, reliance on it to deny parole would not violate the *Ex Post Facto* Clause.  The law still would not make criminal anything that occurred before its enactment, and the law would not increase the punishment for any crimes committed before its enactment."

*Id.* at p. 20.

In his reply to the Commonwealth's response, Mr. Smythe specifically denies asserting a claim of *Ex Post Facto* violation based on the improper application of 42 Pa.C.S. §9718.1. *Petitioner's Reply* at p. 19 ("[t]here is no such claim in petitioner writ or brief.").

I decline, therefore, to consider whether 42 Pa.C.S. §9718 was applied to Mr. Smythe's parole applications, and whether retroactive application of this statute would result in an *Ex Post Facto* violation.

---

[16]      In his habeas petition, Mr. Smythe refers to "42 Pa.Stat.Ann. §9718.1, enacted in December 2000."  He argues "that not only is §9718.1 enacted in December 2000 being retroactively applied as conditions/requirements of parole, extremely disadvantaging him, the Board has imposed an additional impossible task of completing a Phase III Sex Offender Program which is a [life-time] commitment to counseling and programing."  *Habeas Petition: Attached Memorandum of Law* at pp. 9-10.

### 3. Petitioner is Not Entitled to Habeas Relief on His Due Process Claims.

In at least two of his habeas claims, Mr. Smythe includes "due process" language.[17]  In his reply to the Commonwealth's response, Petitioner argues that he has a constitutionally protected liberty interest in parole and that the Board's parole denials have been arbitrary and capricious in violation of his due process rights.  *Petitioner's Reply* at pp. 7-13.

Mr. Smythe's due process claims are without merit.  He cannot demonstrate that the Board's decisions to deny him parole have violated either his procedural or substantive due process rights.

The Fourteenth Amendment to the United States Constitution provides that a state may not "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. Amend. XIV, §1.  The Fourteenth Amendment only requires due process where a state interferes with a protected liberty interest.  *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 459-60 (1993).  Therefore, Mr. Smythe must demonstrate a deprivation of a liberty interest to validly claim a violation of his procedural due process rights.

The United States Constitution does not give an inmate a liberty interest in parole protected by the Fourteenth Amendment.  *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979)("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.")

A state may, under certain circumstances, create liberty interests which are protected by the Due Process Clause.  *Sandin v. Conner,* 515 U.S. 472, 484 (1995).  However, "[ . . . ] the Pennsylvania Supreme Court has long held that 'a denial of parole does not implicate a

---

[17]        *Habeas Petition: Attached Memorandum of Law*: habeas grounds two and ten.

constitutionally protected liberty interest.'" *Thorpe v. Curran*, 80 Fed.Appx. 215, 219 (3d Cir. 2003)(not precedential), *cert. denied,* 124 S.Ct. 2882 (2004). *See Bonilla v. Vaughn*, No. 97-7440, 1998 WL 480833 at *8 (E.D. Pa. August 14, 1998)(because Pennsylvania's parole system grants the Board broad discretion in parole determinations, prisoners in Pennsylvania have no protected liberty interest in the grant of parole).

Because neither the United States Constitution nor Pennsylvania law give Mr. Smythe a constitutionally protected liberty interest in parole, he has not established a violation of his procedural due process rights and his claim is meritless.

Similarly, Petitioner has not established a violation of his substantive due process rights. A parole denial *can* give rise to a substantive due process deprivation if the denial is based upon constitutionally impermissible reasons. *See Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980)("a state statute may not sanction totally arbitrary parole decisions founded on impermissible criteria").

> [C]ourts can review the substance of parole decisions, as distinguished from the adequacy of the procedures, to determine whether a parole board exercised its authority arbitrarily. [ . . . ] When presented with [ . . . ] a discretionary scheme, the role of judicial review on application for a writ of habeas corpus "is to insure that the Board followed criteria appropriate, rational and consistent with the statute and that its decision was not arbitrary and capricious nor based on impermissible considerations. In other words, the function of the judicial review is to determine whether the Board abused its discretion."

*Id.* at pp. 236-237 (*quoting Zannino v. Arnold*, 531 F.2d 687, 690 (3d Cir. 1976)).

"However, federal courts are not authorized by the due process clause to second-guess parole boards and the requirements of substantive due process are met if there is some basis for the challenged decision." *Coady v. Vaughn*, 251 F.3d 480, 487 (3d Cir. 2001).

Mr. Smythe has not established that the Board's decisions to deny him parole are arbitrary or founded on impermissible criteria.  The Parole Board, has over the past nine years, reviewed Petitioner's parole applications and denial parole for specific reasons well within the Board's discretion.  Each denial is amply supported by sufficient grounds, with most cited reasons being: the nature of the crimes committed, Mr. Smythe's need to participate in and complete additional treatment programs for sex offenders, his minimalization/denial of the nature and circumstances of the offenses committed, his refusal to accept responsibility and his interview with the hearing examiner and/or Board member.  As a rational basis exists for each challenged decision, I decline to substitute this court's own judgment under the guise of constitutional scrutiny.  I find, therefore, that the Board's parole denials did not result in a violation of Mr. Smythe's substantive due process rights.[18]

---

[18]    Petitioner asks this Court to infer that the Board's denial of parole over nine years, in light of his "numerous efforts to obtain a favorable parole review and decision" which have been met with the Board's "utmost resistance," is evidence of retaliation.  Having found, consistent with *Coady,* that each challenged decision has a rational basis, I conclude that Petitioner has failed to establish that but for retaliation, he would have been granted parole.

## RECOMMENDATION

For the reasons set forth above, it is recommended that the Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, be DENIED AND DISMISSED WITHOUT AN EVIDENTIARY HEARING.  It is further recommended a finding be made that there is no probable cause to issue a certificate of appealability.

BY THE COURT:

 S/M.  FAITH ANGELL
M. FAITH ANGELL
UNITED STATES MAGISTRATE JUDGE