# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| PHILIP JAMES SMYTHE | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 05-5869 |
| DAVID DIGUGLIELMO, et al. | : | |

## Memorandum and Order

YOHN, J.                                                     October ___, 2007

Petitioner Philip James Smythe, a prisoner in the Pennsylvania State Correctional
Institution at Graterford, Pennsylvania ("SCI-Graterford"), has filed a *pro se* petition for writ of
habeas corpus pursuant to 28 U.S.C. § 2254.  After conducting a *de novo* review of the
magistrate judge's report and recommendation, and upon consideration of petitioner's objections
thereto, I will deny the petition.

## I.  Background

### A.  Factual & Procedural History

Petitioner was convicted in 1991 in the Bucks County Court of Common Pleas of four
counts of aggravated indecent assault, indecent assault, and corruption of minors involving a
seven year old victim.[1]  He was sentenced to imprisonment for an aggregate term of not less than
five years–a period that expired on October 12, 1996–and not more than twenty years–a period

---

[1]In 1989 he also pled guilty to indecent assault and corruption of minors.  He was placed
on probation for four years.  He was then found in violation of probation for molesting a sixteen
year old victim and sentenced to two and one-half to five years in prison.

that would run until October 12, 2011.[2]   After serving his minimum sentence, petitioner became

eligible for parole.   At his first parole review, on March 27, 1997, the Pennsylvania Board of

Probation and Parole ("Board") denied petitioner parole.   In response to this denial, petitioner

filed a state law mandamus action against the Board seeking to compel his release.   The

Commonwealth Court of Pennsylvania dismissed the action on May 9, 1997 after concluding that

the decision whether to grant parole was discretionary and not subject to mandamus.   On May 27,

1998, the Board again denied parole.   (*See* § 2254 Pet. Ex. B).   On August 27, 1998, petitioner

filed a civil complaint based on the parole denial in the Montgomery County Court of Common

Pleas.   The complaint sought money damages pursuant to 42 U.S.C. § 1983 from the members of

the Board in their individual capacities.   The disposition of this suit is not reflected in the record.

The Board subsequently denied petitioner parole on January 15, 1999, September 27,

1999, and September 13, 2000.   (*See* § 2254 Pet. Ex.'s C, D & E.)   On February 18, 2000,

petitioner filed a *pro se* § 2254 habeas petition–based on the September 27, 1999 denial–with

this court.   Petitioner asserted that the denial was in retaliation for the 1998 civil rights suit in

Montgomery County he filed against the individual members of the Board, and that the

Pennsylvania Sentencing Code and due process required his release at the end of his minimum

term of incarceration.   *See Smythe v. Ward*, 2001 U.S. Dist. LEXIS 14932, at *4 n.1 (E.D. Pa.

Sept. 19, 2001).   On September 18, 2001, the habeas petition was dismissed for failure to exhaust

available state judicial remedies without prejudice to petitioner's right to raise federal

constitutional claims in state court.   *See id*. at **11-12.   The Board denied petitioner parole again

---

[2]On August 15, 1994, petitioner filed a federal habeas petition challenging his 1992 conviction and sentence.   This court issued an order denying the petition on April 5, 1995 which the Third Circuit affirmed on January 2, 1996.

on January 10, 2002, September 18, 2002 (which order was modified on April 1, 2003), October 1, 2003 and November 2, 2004 (App. to Gov't Answer 19-26).

On March 19, 2003, petitioner filed a "Petition for Review" with the Commonwealth Court of Pennsylvania, asserting three claims:  (1) the Board's denials of parole applications from 1997 to 2002 violated his due process rights; (2) the Board's review of his parole applications from 1997 to 2002 violated his rights under the Ex Post Facto Clause; and (3) the Board's application of the Truth-In-Sentencing Incentive Grants, 42 U.S.C. § 13704, violated his rights under the Ex Post Facto Clause.  (*See* App. to Gov't Answer 37-41.)  The "Petition for Review" demanded a hearing before the Board within thirty days.  The Board moved for summary relief and dismissal, which was granted on April 10, 2003 based substantially on *Reynolds v. Pennsylvania Board of Probation and Parole*, 809 A.2d 426 (Pa. 2002) which held that the 1996 amendments to the Parole Act did not violate the ex post factor clause facially or as applied to *Reynolds*.  Petitioner appealed and the Pennsylvania Supreme Court affirmed the dismissal on May 16, 2005.

On November 8, 2005,[3] petitioner filed the instant § 2254 habeas petition.  Petitioner generally asserts claims–based on the Board's denials of parole from 1997 through November 2004–for retaliation and violations of his rights under the Due Process and Ex Post Facto Clauses[4] of the United States Constitution.[5]  The government contends that the habeas petition

---

[3]On June 27, 2006, petitioner filed a "Supplement to Plaintiff's Reply" (Document  No. 15) which includes a tenth denial of parole on October 17, 2005.

[4]Petitioner originally based his ex post facto claims on the Board's alleged retroactive application of the 1996 Amendments to the Pennsylvania Parole Act ("Parole Act") and the 2000 Sex Offender Therapy Statute, 42 Pa. Cons. Stat. § 9718.1.  The magistrate judge found that petitioner had withdrawn his ex post facto claims based on the latter statute and therefore

should be denied because:  (1) petitioner has failed to exhaust his retaliation claim; (2) all of

petitioner's claims based on parole denials before October 17, 2005 are moot; (3) all of

petitioner's claims are without merit; and (4) district courts lack jurisdiction to order acts that are

within the Board's discretion.  The magistrate judge–concluding that all of petitioner's claims

were unexhausted or, alternatively, that they were without merit–issued a report and

recommendation that the § 2254 petition should be dismissed and denied without issuing a

certificate of appealability.  Petitioner objects to the report and recommendation that his

retaliation and his ex post facto claim based on the Parole Act be denied; however, petitioner

raises no objections with regard to his due process claims.[6]

## B.  Petitioner's Parole History

The Board has denied petitioner parole each time it considered him from 1997 to 2004.

(*See* § 2254 Pet. Ex.'s A-I.)  In its decisions in 1997 and 1998, the Board cited several reasons

for denying petitioner parole, including his "habitual offender" status, "the assaultive nature of

---

declined to address those claims.  (Rep. & Recom. 23.)  Petitioner raises no objection to this
finding.  (*See* Obj.'s 7-9.)  Therefore, I adopt the portions of the report relevant to this issue (*see*
Rep. & Recom. 23) and find that petitioner has withdrawn his ex post facto claims based on the
2000 Sex Offender Therapy Statute.  Notably, even if petitioner would have maintained those
claims, they would have been denied on their merits.

[5]The magistrate judge interpreted the § 2254 petition as asserting eleven claims for relief.
(Rep. & Recom. 12-14.)  In his objections, petitioner clarifies that some of the numbered sections
of the petition are not claims but rather supporting factual allegations.  (Obj.'s 5.)  I find that the
§ 2254 petition contains several retaliation, due process, and ex post facto claims based on the
Board's decisions to deny petitioner parole from 1997 through November 2004.  (*See* Br. in
Supp. of § 2254 Pet.)

[6]As petitioner does not object to the report and recommendation that his due process
claims be denied (*see* Obj.'s 10), I will approve and adopt those parts of the report relevant to his
due process claims, and will deny those claims.

the offense," his "very high assaultive behavior potential," and his "failure to participate in and benefit from a treatment program for sex offenders." (§ 2254 Pet. Ex.'s A, B.)  The 1997 decision also cited the "seriousness of offense" as an additional reason for denying parole. (*See* § 2254 Pet. Ex. A.)  Both the 1997 and 1998 decisions notified petitioner that his participation in a prescriptive program plan for sex offenders, including the J.J. Peters Program, and maintenance of a clear conduct record and recommendation for parole would be evaluated at his next parole review. (*See* § 2254 Pet. Ex.'s A, B.)

In its January 1999 and September 1999 decisions, the Board–echoing the language of the 1996 Amendments–stated:  "Following an interview and review of your file, the [Board] has determined that the mandates to protect the safety of the public and to assist in the fair administration of justice cannot be achieved through your release on parole." (*See* § 2254 Pet. Ex.'s C, D, E.)  However, the Board's decision in September 2000 did not cite "the mandates to protect the safety of the public" as a basis for denying petitioner parole. (*See* § 2254 Pet. Ex. E.)  In each of the three decisions, the Board notified petitioner that his participation in (and completion of) a prescriptive program plan for sex offenders and maintenance of a clear conduct record and recommendation for parole would be considered at his next parole review–essentially the same notice the Board had provided in its 1997 and 1998 decisions.

On January 10, 2002, the Board denied parole reaffirming the "Board action" recorded on September 13, 2000.  In September 2002, the Board denied parole for the same reasons it had cited in its September 2000 decision. (*See* § 2254 Pet. Ex. F.)  The Board directed petitioner to participate in and complete a treatment program–"Sex Offenders, Phase III"–and maintain a clear conduct record and recommendation for parole.  This decision was modified in April 1, 2003 to

5

state the following:

> Following an interview with you and a review of your file, and having considered all matters required pursuant to the Parole Act of 1941, as amended by 61 P.S. § 331.1 *et seq*., the [Board], in the exercise of its discretion, has determined at this time that: Your best interests do not justify or require you being paroled/reparoled; and, the interests of the Commonwealth will be injured if you were paroled/reparoled. Therefore, you are refused parole/reparole at this time.  The reasons for the Board's decision include the following:  [1] Your lack of remorse for the offense(s) committed.  [2] Reports, evaluations and assessments concerning your physical, mental and behavior condition and history.  [3] Your need to participate in and complete additional institutional programs.  [4] Your interview with the hearing examiner and/or Board member.

(§ 2254 Pet. Ex. G.)  The Board did not modify the September 2002 decision's notice to petitioner of what factors it would consider at his next parole review.

In October 2003 and November 2004, the Board denied petitioner parole for the same reasons it cited in the modified September 2002 decision; however, the Board additionally stated that petitioner was being denied parole because of his "version of the nature and circumstances of the offense committed."  (*See* § 2254 Pet. Ex.'s H, I.)  Further, in its November 2004 decision, the Board cited petitioner's "refusal to accept responsibility for the offense(s) committed" as another reason for denying parole.  The Board's notification to petitioner of its future considerations did not change from its September 2002 decision.

## II.  Legal Standards

## A.  Standard of Review

Where a habeas petition has been referred to a magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), this court's review of "those portions of the report or specified proposed findings or recommendations to which objection is made" is *de*

6

*novo*.  § 636(b).  After conducting such a review, this court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."  *Id.*

**B.  Antiterrorism and Effective Death Penalty Act of 1996**

Under § 2254, a federal court is empowered to grant habeas corpus relief to a prisoner "in custody pursuant to the judgment of a State court" where his custody violates the Constitution of the United States.  § 2254(a).  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") entitles a petitioner to habeas relief only where the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings," § 2254(d)(2).

A state court decision may be "contrary to" clearly established federal law in one of two ways.  § 2254(d)(1).  First, a state court decision is contrary to clearly established precedent where "the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases."  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  Second, a state court decision will be "contrary to" clearly established precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the] precedent."  *Id*. at 406.  On the other hand, a state court decision involves an "unreasonable application" of federal law where it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  *Id*. at 407-08.

Habeas relief may also be granted where a state court decision "resulted in a decision that was based on an unreasonable determination of the facts."  § 2254(d)(2).  However, "in

conducting a habeas analysis a federal court must presume that the factual findings of both state

trial and appellate courts are correct, a presumption that can only be overcome on the basis of

clear and convincing evidence to the contrary." *Stevens v. Del. Corr. Ctr.*, 295 F.3d 361, 368 (3d

Cir. 2002) (citing 28 U.S.C. § 2254(e)(1)). Thus, to prevail under the "unreasonable

determination" prong, petitioner must demonstrate that the state court's determination of the

facts was objectively unreasonable in light of the evidence available; mere disagreement with the

state court–or even a showing of erroneous factfinding by the state court–will be insufficient to

warrant relief, provided that the state court acted reasonably. *Henderson v. DiGuglielmo*, 138 F.

App'x 463, 466 (3d Cir. 2005) (not precedential) (citing *Lambert v. Blackwell*, 387 F.3d 210, 235

(3d Cir. 2004)); *see also Weaver v. Bowersox*, 241 F.3d 1024, 1030 (8th Cir. 2001) (citing

*Williams*, 529 U.S. at 409); *Torres v. Prunty*, 223 F.3d 1103, 1107-08 (9th Cir. 2000) (citing

same). However, before a federal court can review the merits of a state prisoner's petition for a

writ of habeas corpus, generally, the court must determine whether the petitioner has met the

requirements of the doctrines of exhaustion and procedural default.

    A federal court will not grant a state prisoner's petition unless available state court

remedies on the federal constitutional claims have been exhausted. § 2254(b)(1). "In other

words, the state prisoner must give the state courts an opportunity to act on his claims before he

presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S.

838, 842 (1999). This exhaustion rule requires petitioner to "fairly present" his federal claims at

each level of the state court system. *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999)

(citations omitted). To "fairly present" a claim, a petitioner must present its "factual and legal

substance to the state courts in a manner that puts them on notice that a federal claim is being

asserted." *Id.* at 261 (citations omitted).  While a petitioner need not cite "book and verse" of the federal Constitution, *Picard v. Connor*, 404 U.S. 270, 277 (1971), he must "give the State 'the opportunity to pass upon and correct' alleged violations of its prisoners' federal rights" before presenting those claims in federal court.  *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard*, 404 U.S. at 275).  Generally under this rule, a federal court must dismiss without prejudice habeas petitions that contain any unexhausted claims, i.e. mixed petitions.  *Slutzker v. Johnson*, 393 F.3d 373, 379 (3d Cir. 2004); *see also Rhines v. Weber*, 544 U.S. 269, 273-74 (2005) (discussing the "stay and abeyance" procedure available to district courts).  However, under § 2254(b)(2),[7] a federal court "may reject claims on the merits even though they were not properly exhausted," particularly where "it is apparent that the claims in question lack merit." *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005).

## III. Discussion

## A. Exhaustion

Although the government only argued that petitioner's retaliation claim was unexhausted, the magistrate judge concluded that all of petitioner's claims were unexhausted.  (Rep. & Recom. 14.)  Petitioner objects to this conclusion as it relates to his retaliation and ex post facto claims. *See supra* note 6.  Except with regard to petitioner's ex post facto claims based on the Board's decisions following its September 18, 2002 decision, I will sustain his objection.  Further, although I conclude that petitioner's ex post facto claims based on the Board's decisions following September 18, 2002 are unexhausted, I will nevertheless deny them on their merits.

---

[7]Section 2254(b)(2) provides:  "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  § 2254(b)(2).

*See* § 2254(b)(2); *Bronshtein*, 404 F.3d at 728.

In his objections, petitioner appears to argue that he raised his retaliation claim in his brief to the Pennsylvania Supreme Court–which has not been submitted to this court–filed on September 9, 2004.  (Obj.'s 1.)  In addition, petitioner appears alternatively to argue that under *Defoy v. McCullough*, 393 F.3d 439 (3d Cir. 2005), he does "not have to exhaust state remedies before filing a Federal Action on parole denials" (Obj.'s 2).  With regard to petitioner's retaliation claim, I am in agreement with his second argument.  In *Defoy*, the Third Circuit held that, other than ex post facto claims, "claims of constitutional violations in the denial of parole in Pennsylvania need not be presented to the state courts via a petition for writ of mandamus in order to satisfy the requirement of exhaustion."  393 F.3d at 445 (interpreting *Coady v. Vaughn*, 770 A.2d 287 (Pa. 2001)); *see also Benchoff v. Colleran*, 404 F.3d 812, 819 (3d Cir. 2005) ("Pennsylvania petitioners are not obligated to file either a writ of mandamus or a writ of habeas corpus before challenging parole denial on non-ex post facto grounds . . . .").[8]  Thus, I will sustain petitioner's objection and reject the relevant portions of the report and recommendation to the extent that it rejected petitioner's retaliation claim because it was not exhausted.

Unlike petitioner's retaliation claim, his ex post facto claims were required to be exhausted through presentation to the state courts.  *See Coady*, 770 A.2d at 290 (holding that mandamus is available where a challenge to the denial of parole is premised on the Ex Post Facto Clause); *see also Defoy*, 393 F.3d at 445 ("We therefore read *Coady*'s holding narrowly, applying only to ex post facto claims.").  The magistrate judge concluded that petitioner's ex post

---

[8]In Pennsylvania, "[d]irect appeal of the denial of parole is precluded . . . due to its discretionary nature . . . ."  *Coady*, 770 A.2d at 289.

facto claims were unexhausted.  In his objections, petitioner argues that he has exhausted his ex

post facto claims based on the Board's decisions made prior to March 16, 2003–the date on

which petitioner filed his "Petition for Review" with the Commonwealth Court of Pennsylvania.

(*See* App. to Gov't Answer 37-41.)  After reviewing the "Petition for Review," I agree with

petitioner that his ex post facto claims based on the Board's decisions made prior to March 16,

2003 have been exhausted and will sustain his objection as to those claims.  However, petitioner

concedes that he has not presented his ex post facto claims based on the Board's decisions made

after that date.  (Obj.'s 4.)  Petitioner asserts that his failure to exhaust the latter claims should be

excused because they are based on the Board's decisions made after he had already filed his

"Petition for Review."  Notably, petitioner does not assert that he was unable to initiate

subsequent legal actions in state court to challenge the Board's decisions in 2003 and 2004.

Therefore, I conclude that petitioner's ex post facto claims based on the Board's decisions issued

after March 16, 2003 are unexhausted.  Nevertheless, I will also deny the unexhausted ex post

facto claims on their merits.  *See* § 2254(b)(2); *Bronshtein*, 404 F.3d at 728.

**B.  Merits of Retaliation Claim**

The Third Circuit has held that "retaliation for the exercise of constitutionally protected

rights is itself a violation of rights secured by the Constitution . . . ."  *White v. Napoleon*, 897

F.2d 103, 111-12 (3d Cir. 1990) (citing *Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir.

1981)); *see also Burkett v. Love*, 89 F.3d 135, 140 (3d Cir. 1996) ("Case law has also established

that a state may not bar parole in retaliation for a prisoner's exercise of his constitutional rights. .

. . [A]n allegation, that parole was denied in retaliation for the successful exercise of the right of

access to the courts, states a cognizable claim for relief."); *Mickens-Thomas v. Vaughn*, 355 F.3d

294, 309 (3d. Cir. 2004) (finding the Board's use of "known but hitherto uncounted historical factors after *Thomas* brought state and federal actions" created a "sufficient appearance of vindictiveness" to justify voiding consideration of those factors and also raise a "presumption of vindictiveness" by the Board.  In a retaliation claim, the petitioner bears the initial burden of showing that the exercise of a constitutional right was "a substantial or motivating factor" in denying him parole.  *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)).  Even when a petitioner satisfies this burden, his retaliation claim will fail if the government is able "to prove by a preponderance of the evidence that it would have taken the same [] action even in the absence of the protected activity." *Rauser*, 241 F.3d at 333.

In his retaliation claim, petitioner asserts that the Board denied his parole applications because he exercised his right to access the courts and challenge the Board's decisions.[9]

Petitioner alleges that each time he challenged the Board, the Board denied his parole and changed its reasoning thereby invalidating each previous alleged concern "retroactively applied or by using consideration that had been applied during the actual sentence."

However, the record is not sufficient to support any such conclusion.  Petitioner's initial parole denial on March 27, 1997 was based on "habitual offender, assaulted instant offense, very high assault of behavior potential, your need for counseling, failure to participate in and benefit from a treatment program for sex offenders and seriousness of offense."  The denial also stated

---

[9]Notwithstanding the instant action, petitioner has filed two actions in the state court in March of 1997 and March of 2003 and one in federal court in August of 1994 directly challenging the Board's denials of his parole applications.  In addition, in August 1998, petitioner filed a § 1983 action against the individual board members.

that in preparation for the next parole review he must "participate in prescriptive program plan, including J.J. Peters' program." Shortly thereafter, petitioner filed his mandamus action in Commonwealth court. The next parole denial, on May 27, 1998 contained almost precisely the same reasons except that the treatment program explanation now stated "failure to benefit from a treatment program for sex offenders." Petitioner then filed his § 1983 action against the members of the Parole Board in August of 1998. His next parole denial on January 15, 1999 contained new introductory language but again emphasized at the next interview the Board would consider "whether you have successfully completed a treatment program for sex offenders," maintenance of a clean conduct record and favorable recommendation for parole. The next denial on September 27, 1999 contained the same language. Both of the 1999 decisions contained essentially the same language of the 1997 and 1998 decisions.

Petitioner then filed his § 2254 action in this court on February 18, 2000. On September 13, 2000, the Board again denied parole stating that at the next interview the Board would consider "whether you have successfully completed a treatment program for sex offenders." On January 10, 2002, the Board reaffirmed the Board action recorded on September 13, 2000 without further explanation. On September 18, 2002, the Board again denied parole and stated that at the next interview the Board would consider whether you have participated in/successfully completed a treatment program for sex offenders, Phase III. Petitioner had completed Phase II of the Peters' program in September of 2002.[10]

---

[10]Throughout this process the Board almost universally stated that it would consider whether petitioner had maintained a clean conduct record and received a favorable recommendation for parole from the department.

13

The Board then modified the September 18, 2002 order on April 1, 2003 to state a new introduction and some different reasons including "lack of remorse for the offenses committed, reports, evaluations and assessments concerning petitioner's physical, mental and behavior condition and history, petitioner's need to participate in and complete additional institutional programs and an interview with the hearing examiner and/or Board member.  However, this modification occurred two and a half years after the petitioner's § 2254 action in this court was filed, four years after his § 1983 action and five years after his mandamus petition in Commonwealth court.  In addition, the Board again stated that at the next interview the Board would consider whether he had "participated in/successfully completed a treatment program for sex offenders, Phase III."

Six months later petitioner filed his petition for review in the Commonwealth court on March 16, 2003.  The next Board decision on October 1, 2003 contained the same introductory language as before, noted the need for reports, evaluations and assessments as before and stated that it would next consider "would he have successfully completed a treatment program for sex offender with full disclosure."  The next denial on November 2, 2004 again contained the same introductory language and again stated that petitioner needed to participate in and complete additional institutional programs and, in particular, a treatment program for sex offenders.  It also added as reasons petitioner's version of the offenses committed, his refusal to accept responsibility for those offenses and his lack of remorse for the offenses.

In further support of his retaliation claim, petitioner has submitted two documents–dated April 10, 1998 and February 28, 2000–showing that he became an active member of treatment

programs for sex offenders and that he benefited from them.[11]  (§ 2254 Pet. Ex.'s M, N.)

Petitioner contends that these documents show that the Board's denial based on his failure to

complete treatment for sex offenders was a pretext for retaliation.  While the documents are

evidence of petitioner's efforts to receive treatment, they do not show that he successfully

completed the treatment programs or that they were the programs designated by the Board.

Further, the only document revealing petitioner completed a treatment program for sex offenders

refers to Phase II of the Peters Program and is dated September 2002.  (§ 2254 Pet. Ex. L.)[12]

There is no evidence in the record that petitioner has completed Phase III of that program.

        After a review of this evidence, which has been submitted by petitioner, I can find no

facts from which I could conclude that the decisions by the Board create a "sufficient appearance

of vindictiveness" to justify voiding consideration of any of the factors cited by the Board or to

raise a "presumption of vindictiveness" by the Board as found in *Mickens-Thomas*.

        Therefore, because petitioner has not satisfied his burden of showing that his initiation of

legal actions challenging the Board's 1997 decision or later decisions was a substantial or

motivating factor behind the Board's decision to deny parole thereafter, I conclude that his

retaliation claim is without merit.[13]  Thus, petitioner's retaliation claim will be denied.

---

[11]These submitted documents–dated April 10, 1998 and February 28, 2000–show that he became an active member of a treatment program for sex offenders and that he "benefited" from them.  These are not the Peter Programs.  (§ 2254 Pet. Ex.'s M, N.)  Moreover, they do not state that petitioner successfully completed the treatment programs.

[12]Exhibit "L" of the § 2254 petition is a certificate of completion for Phase II of the Joseph J. Peters Sex-Offender Treatment Program.  (§ 2254 Pet. Ex. L.)

[13]Even assuming petitioner had satisfied this burden, I conclude that his retaliation claim would nevertheless fail because the government has established by a preponderance of the evidence that the Board would have denied petitioner parole from 1998 to 2002–based on his

**C.  Merits of Ex Post Facto Claim**

The Third Circuit, in *Richardson v. Pennsylvania Board of Probation & Parole*, 423 F.3d

282 (3d Cir. 2005), stated that the Ex Post Facto Clause "applies to a statute or policy change

which 'alters the definition of criminal conduct or increases the penalty by which a crime is

punishable.'"  423 F.3d at 287 (quoting *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 506 n.3

(1995)).  While parole boards are afforded discretion in making parole determinations, "[t]he

[Supreme] Court made clear that 'the presence of discretion does not displace protections of the

Ex Post Facto Clause' and acknowledged the 'danger that legislatures might disfavor certain

persons after the fact is present even in the parole context.'"  *Richardson*, 423 F.3d at 288

(quoting *Garner v. Jones*, 529 U.S. 244, 253 (2000)).  The ex post facto inquiry involves a two-

prong analysis:  "(1) whether there was a change in the law or policy which has been given

retrospective effect, and (2) whether the offender was disadvantaged by the change."

*Richardson*, 423 F.3d at 287-88 (citing *Weaver v. Graham*, 450 U.S. 24, 29 (1981)).  Under the

second prong, "a retroactive change in law or policy must create a 'sufficient risk of increasing

the measure of punishment attached to the covered crimes;' a 'speculative and attenuated

possibility . . . increasing the measure of punishment' is not enough."  *Richardson*, 423 F.3d at

288 (quoting *Morales*, 514 U.S. at 509).  Further, "it is not sufficient for a prisoner to show that

the Board relied on a new law or policy.  Rather, he must also adduce some evidence that this

new law or policy disadvantaged him by creating 'a significant risk of increasing his

punishment.'"  *Richardson*, 423 F.3d at 292 (quoting *Garner*, 529 U.S. at 255 (requiring

---

failure to complete successfully a treatment program for sex offenders–even if he had not
initiated the legal proceedings challenging the 1997 denial.  *See Rauser*, 241 F.3d at 333.

petitioner to show that "as applied to his own sentence the law created a significant risk of increasing his punishment")). Thus, "the ultimate question is the effect of the change in parole standards on the individual's risk of increased punishment." *Richardson*, 423 F.3d at 291;[14] *see also Taylor v. Pa. Bd. of Prob. & Parole*, 181 F. App'x 253, 255 (3d Cir. 2006) (not precedential) (stating a petitioner "must provide such evidence as indications that he would have been a good candidate for parole under the old law, comparisons of parole rates for prisoners with similar convictions before and after the 1996 amendments, and the extent to which the reasons given for denying him parole would not have been considered before 1996").

**1. Prong One: whether the 1996 Amendments to the Parole Act were a change in law or policy that has been given retrospective effect.**

In *Mickens-Thomas v. Vaughn*, 321 F.3d 374 (3d Cir. 2003), the Third Circuit considered whether the 1996 Amendments to the Parole Act violated the Ex Post Facto Clause.[15] The court

---

[14]Although the Third Circuit has recognized the difficulty prisoners face in adducing evidence of being individually disadvantaged, *see Richardson*, 423 F.3d at 291-92, it has concluded that "the evidentiary requirement of the jurisprudence must be honored," *id*. at 292. A petitioner can overcome the difficulty of showing he or she was individually disadvantaged in several ways:

> For example, a petitioner might compare the parole rates for prisoners with similar convictions before and after the 1996 Amendments, state whether the Parole Guidelines would indicate that the petitioner was a good parole candidate, or draw inferences from the statement of reasons provided by the Parole Board regarding the criteria used for the parole determination in that individual's case.

*Id*. at 292-93. Further, the petitioner does not have to satisfy the "but for" standard, which "has no basis in federal ex post facto law." *Id*. at 293 n.5 (rejecting the Pennsylvania Supreme Court's suggestion that a petitioner would have to show that but for the 1996 Amendments, he would have been paroled).

[15]The Parole Act directs the Board to consider, among other things, "the prisoner's complete criminal record, conduct while in prison, 'physical, mental, and behavior condition and history,' the 'nature and circumstances of the offense committed,' and 'the general character and

concluded that the "statute unequivocally has been interpreted by the Pennsylvania courts to express broad and general aspirations of Pennsylvania's parole policy," *Mickens-Thomas*, 321 F.3d at 384, and found that the issue is "not whether the statute on its face pertains to parole decisionmaking, but whether, *in practice*, the new language has altered the fundament for reviewing parole applications," *id*. (emphasis in original).  In *Richardson*, the Third Circuit summarized its holding in *Mickens-Thomas*:

> We concluded there was "significant evidence" that the practical effect of the 1996 Amendments was to change the weight that public safety was given in the parole calculation.  Even though the Board had always used public safety as one consideration in parole determinations, we found that, after 1996, the Board gave public safety far greater weight.  This change particularly affected the chances of parole for violent offenders, who are subjected to "a more stringent standard of review" than under the pre-1996 scheme. . . . [We] found that the 1996 Amendments made a change in Pennsylvania parole policy as a general matter . . . .

*Richardson*, 423 F.3d at 289 (citations omitted).[16]  Later, the court specifically stated "we hold

---

background of the prisoner.'" *Richardson*, 423 F.3d at 284 (discussing the Parole Act).  Further, the Board also looks to Pennsylvania's non-binding "Parole Decision Making Guidelines . . . , which provide a prediction of the likelihood of parole by assigning a numerical value to certain criteria, based on patterns of recidivism and an assessment of risk to the community."  *Id*. at 284-85 (citing *Mickens-Thomas*, 321 F.3d at 378-79).

     Prior to the 1996 Amendments, the Parole Act's statement of the general policy of the Pennsylvania parole system "emphasized the values of rehabilitation and restoration of social and economic life;" the 1996 Amendments modified the statement of general policy "to make public safety the primary consideration."  *Richardson*, 423 F.3d at 285 (interpreting the impact of the 1996 Amendments to the Parole Act).

    [16]In *Richardson*, the Third Circuit rejected the government's contention that *Winklespecht v. Pennsylvania Board of Probation & Parole*, 813 A.2d 688, 691-92 (Pa. 2002) (holding that the 1996 Amendments do not create a substantial risk "that parole would be denied any more frequently than under the previous wording"), eviscerated *Mickens-Thomas*'s holding. *Richardson*, 423 F.3d at 290-91 (concluding that subsequent Pennsylvania Supreme Court decisions undermined *Winklespecht*).

that the first prong of the ex post facto inquiry is satisfied." *Id*. at 291.  Thus, I conclude *Richardson* establishes that the first prong of the ex post facto analysis is satisfied and requires no further discussion.[17]

**2.  Prong Two:  whether petitioner was individually disadvantaged by the 1996 Amendments to the Parole Act.**

The magistrate judge concluded that petitioner had not satisfied his burden under the second prong of the ex post facto analysis of demonstrating that he was individually disadvantaged by the 1996 Amendments to the Parole Act.  Petitioner objects and contends that he has adduced enough evidence to show that he was individually disadvantaged by the application of the 1996 Amendments to his case.  After reviewing petitioner's arguments and the submitted documents–particularly the decisions issued by the Board–I will overrule his objection.

Contrary to petitioner's assertions, the reasons cited by the Board for denying parole in the 1997 and 1998 decisions do not show that he was individually disadvantaged by the modification of the Parole Act's policy statement–under the 1996 Amendments–to make public safety the primary consideration of the Board.  Rather, the Board's decisions reflect that its primary concern was petitioner's rehabilitation–the benefit from the participation in and completion of treatment programs for sex offenders.  (*See* § 2254 Pet. Ex.'s A, B.)  Significantly, the only document submitted by petitioner with regard to completing a treatment program for sex offenders indicates that he did not complete the Peters Program until September of 2002.  (*See* §

---

[17]The magistrate judge also concluded that petitioner had satisfied the first prong of the ex post facto analysis (Rep. & Recom. 18); therefore, I adopt those relevant portions of the magistrate judge's report.

2254 Pet. Ex. L.)[18]

 While the Board's decisions in January and September of 1999 echo the 1996

Amendments in its introductory comments by citing "the mandates to protect the safety of the

public," they also cite other reasons for denying parole.  Likewise, later introductory references in

April and October of 2003 and November of 2004 to the "Parole Act of 1941, as amended" cite

other reasons for denying parole.  For example, the 1999 and 2000 decisions cite petitioner's

interview, history and file–including his failure to complete a treatment program for sex

offenders – as reasons for denying parole.  (*See* § 2254 Pet. Ex.'s C, D.)  The Board's subsequent

decisions from 2003 to 2004 state that petitioner was denied parole because the Board

determined that his best interests would not justify parole and the Commonwealth's interests

would be injured if parole was granted.[19]  (*See, e.g.,* § 2254 Pet. Ex. G; Rep. & Recom. 21-22.)

In addition, petitioner was denied parole from 2002 through 2004 for other reasons, such as his

refusal to take responsibility for the offenses committed, lack of remorse, physical and mental

assessments and reports, interviews with the Board, and need to participate in and complete

additional institutional programs.  Thus, after reviewing the Board's decisions, I conclude that

they do not support an inference that the Board's primary consideration was protection of public

 [18]Petitioner completed Phase II of the Joseph J. Peters Sex-Offender Treatment Program in September 2002.  (*See* § 2254 Pet. Ex. L.)

 [19]As the magistrate judge correctly noted, subsections 331.21(a) and (c) of the Parole Act, titled "Power to Parole," authorizes:

> the Board, in its discretion, to grant parole (or re-parole) "whenever in its opinion the best interests of the convict justify or require his being paroled and it does not appear that the interests of the Commonwealth will be injured thereby."  These sections have not changed in any material way since 1941.

(Rep. & Recom. 21 n.14 (citations omitted).)

safety.  As in *Richardson*, "while public safety appears to have been one factor in the denial of

[petitioner's] parole, it is hard to infer from these general statements the degree to which the

1996 amendments impacted [petitioner's] parole determination."  Petitioner has failed to proffer

any evidence supporting his assertion that the Board's primary consideration during his

individual parole reviews was to protect the safety of the public.

Further, and equally as important, petitioner has adduced no evidence other than the

decisions of the Board which might tend to establish that he would have been granted parole

under the Parole Act prior to its amendment in 1996.  *See Taylor*, 181 F. App'x at 255 (not

precedential) (interpreting *Richardson*, 423 F.3d at 292-93).  He has failed to produce any of the

types of evidence suggested in *Richardson*.  Petitioner has failed to compare the parole rates for

prisoners with similar convictions before and after the 1996 amendments.[20]  *See Richardson*, 423

F.3d at 293.  He has also failed to analyze the Parole Guidelines as applied to him.  Finally,

petitioner has failed to provide any evidence "that he would have been a good candidate for

parole under the old law" or "the extent to which the reasons given for denying him parole would

not have been considered before 1996."  *Taylor*, 181 F. App'x at 255 (not precedential) (citing

*Richardson*, 423 F.3d at 292-93).

Petitioner argues that the Board relied on reasons unauthorized by the Parole Act prior to

the 1996 Amendments, including his failure to participate in and complete treatment programs

---

[20]In his objections, petitioner alleges–without citation–that before the 1996 Amendments, "the rate of release on parole at the minimum sentence parole eligibility date was 80% for all inmates . . . , almost immediately it dropped to 31% for violent offenders."  (Obj.'s 7.)  Even if I were to assume that this unsupported allegation were true, it would not be sufficient to show that petitioner was individually disadvantaged by the 1996 Amendments.  *See Richardson*, 423 F.3d at 293.  *Richardson* requires more than such a general allegation.

for sex offenders, his lack of remorse for the offenses committed, and the need to protect the safety of the public.  (*See* Br. in Supp. of § 2254 Pet. 1-18.)  Petitioner's argument is without merit.  Prior to the 1996 Amendments, the Parole Act authorized the Board to rely on all the reasons it cited for denying petitioner parole, including the need to protect the safety of the public.  *See supra* note 13; *see also Richardson*, 423 F.3d at 289 (stating that "the Board ha[s] always used public safety as one consideration in parole determinations").  Thus, I conclude that petitioner has failed to demonstrate that, as applied to him, the 1996 Amendments "created a significant risk of increasing his punishment."  *Richardson*, 423 F.3d at 292 (quoting *Garner*, 529 U.S. at 255).  As in *Richardson*, the intense factual inquiry required to be conducted as to petitioner as an individual finds petitioner's claim lacking.  As such, I will overrule petitioner's objection (Obj.'s 7-9) and adopt the relevant portions of the magistrate judge's report (Rep. & Recom. 16-22).

## IV.  Conclusion

For all of the above-stated reasons, I will overrule petitioner's objections and deny the habeas petition.  The court must now determine if a certificate of appealability should issue.  A court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This requires that the petitioner "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The court has determined that petitioner's constitutional claims are without merit, and is persuaded that reasonable jurists would not find this assessment debatable or wrong.  Therefore, petitioner has failed to make a substantial showing of the denial of a constitutional right, and a

certificate of appealability will not issue.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PHILIP JAMES SMYTHE

   v.

DAVID DIGUGLIELMO, et al.

:
:
:      CIVIL ACTION
:
:      NO. 05-5869
:
:
:
:

# Order

And now, this _____ day of October, 2007, upon careful consideration of the petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, the government's response, the petitioner's reply, the report and recommendation of the magistrate judge, and petitioner's objections thereto, it is hereby ORDERED that:

1.    Petitioner's objections are OVERRULED to the extent stated in the memorandum.

2.    The report and recommendation of the magistrate judge is APPROVED and ADOPTED to the extent that it is consistent with this memorandum and order.

3.    The petition for writ of habeas corpus is DENIED.

4.    The petitioner having failed to make a substantial showing of the denial of a constitutional right, there is no ground to issue a certificate of appealability.

5.    The Clerk shall CLOSE this case statistically.

s/William H. Yohn Jr.
William H. Yohn Jr., Judge